UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD L. EATON,

    Plaintiff,

v.                                  Case No. 1:10-cv-714
                                       Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

                                      /

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on April 5, 1950 (AR 56).[1] He completed the 10th grade and later obtained a high school diploma (AR 325). Plaintiff also reported to an examining psychologist that he "completed a Journeyman apprenticeship in Machine Repair and does have Journeyman status" (AR 181). Plaintiff alleged a disability onset date of February 2, 2004 and resumed working in November 2006 (AR 56). He seeks DIB for a closed period from February 2, 2004 to November 2006 (AR 56, 350). He had previous employment a janitor, a delivery driver, a press operator and a maintenance person at an automotive factory (AR 324-27, 342). Plaintiff identified his disabling conditions as: pain in the back, right leg and right foot; diabetes; problems with his hands "freezing up;" depression; problems with memory; problems concentrating; feelings of claustrophobia in

---

[1] Citations to the administrative record will be referenced as (AR "page #").

crowds; post traumatic stress disorder (PTSD); sleep apnea; inability to focus with his eyes (e.g., while driving at night); pain in the left ear; headaches; hypertension; and swelling and blisters on his feet (referred to as "jungle rot") (AR 324-46). On February 15, 2008, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 16-25). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

3

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step. At step one, the ALJ found that plaintiff's last insured date for DIB is June 30, 2009 (AR 18). The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 2, 2004 through November 2006 and explained plaintiff's recent work history as follows:

> Records show the claimant worked from July 2003 to February 2004 as a press operator on a full-time basis. This job ended because he was laid off and was never called back. He returned to work December 2004 to January 2005 as a truck driver and this ended because he was sick and could not work anymore. The claimant testified that he is currently working at Wal-Mart and started in November 2006. He earns $9.40 per hour and works 37-39 hours per week. The claimant also testified that he collected unemployment benefits when he was not working.

(AR 18).

At step two, the ALJ found that plaintiff suffered from severe impairments of diabetes mellitus, sleep apnea, depression, and post-traumatic stress disorder (AR 18). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 20). The ALJ decided at the fourth step as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except that he should climb no ladders, ropes, or scaffolds and only occasionally climb stairs, do any kneeling, crouching, crawling, or bending. He can operate foot controls only 2/3 of the time. He is limited to simple, unskilled work that does not involve maintaining intense concentration, although he can remain on tasks. He cannot have more than minimal contact with co-workers, supervisors, and general public [sic]. He is limited to low stress work that is routine and that does not involve frequent changes or adaptations, meeting production quotas, or keeping pace with co-workers.

(AR 21). The ALJ determined that plaintiff was not disabled at this step (AR 24). Specifically, the ALJ found that plaintiff was capable of performing his past relevant work as a press operator and his current job as a janitor, noting that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity" (AR 24). Accordingly, the ALJ determined that plaintiff was not under a disability as defined in the Social Security Act from February 2, 2004 through the date of the decision (February 15, 2008) (AR 24-25).

### III. ANALYSIS

Plaintiff has raised one issue (with sub-issues):

**Whether plaintiff is entitled to a closed period of Social Security Disability Insurance Benefits from February of 2004 through November of 2006.**

**A.  The ALJ erred when she concluded that plaintiff could not meet the Social Security Administration requirements for disability while maintaining employment.**

Plaintiff seeks DIB for a closed period, commencing on February 2, 2004 and ending in November 2006 (AR 350). "In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *Pickett v. Bowen*, 833 F.2d 288, 289 n. 1 (11th Cir. 1987). Plaintiff contends that the ALJ erred "when she concluded that the plaintiff could not meet the Social Security Administration requirements for disability while maintaining employment." Plaintiff's Brief at p. 10. While the ALJ discussed plaintiff's work history, her decision did not contain this explicit conclusion. As previously discussed, the ALJ found that plaintiff did not engage in substantial gainful activity during the closed period, but that plaintiff did collect unemployment benefits "when he was not working." *See* discussion in § II, *supra*. In determining plaintiff's RFC, made the following determination:

> The claimant's work records show that he worked during the requested closed period and collected unemployment benefits when he was not working. Between the record and the testimony there is no clear indication that there was a twelve-month period when he was unable to work. The record is inadequate to meet even minimal burden [sic] of substantial evidence required for disability.

(AR 23).

To the extent that plaintiff contends that the ALJ improperly reviewed his work history before and after the closed period, such a claim is without merit. A claimant's work record is a factor to be considered when evaluating a claimant's credibility as well as the intensity and persistence of symptoms. *See* 20 C.F.R. § 404.1529(c)(3) (in evaluating a claimant's symptoms, "[w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating or nontreating source, and observations by our employees and other persons"); *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994) ("[a]dditional factors supporting [the claimant's] credibility are that she had a long, 17 year, work history").

In evaluating plaintiff's claim for DIB, it is appropriate for an ALJ to consider plaintiff's act of filing for unemployment benefits. "Applications for unemployment and disability benefits are inherently inconsistent." *Workman v. Commissioner of Social Security*, 105 Fed.Appx. 794, 801 (6th Cir. 2004), citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) ("[a]lthough she claims that she was unable to work in 1977, [the claimant] filed for unemployment in 1978 exhibiting the fact that she felt that she was capable of working at that time"). *See also*, *Bowden v. Commissioner Social Security*, No. 97-1629, 1999 WL 98378 at *7 (6th Cir. Jan. 29, 1999) (court observed that while a claimant argued that the inherent inconsistency in filing for disability benefits and unemployment benefits "should not be embraced . . . she offer[ed] no

reasonable explanation of how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that she is ready and willing to work"). Accordingly, plaintiff's claim that the ALJ improperly considered his work history should be denied.

> **B. The ALJ failed to provide adequate reasons and bases for her refusal to accept the GAF scores and clinical assessments of the treating VA physicians contrary to *Rogers v. Commissioner of Social Security*, 486 F.3d 234 (6th Cir. 2007) and *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004) and 20 C.F.R. § 404.1527.**

Plaintiff contends that the ALJ failed to properly evaluate the medical opinion evidence of "Dr. Tripi and the staff at the VAMC in Battle Creek." Plaintiff's Brief at p. 12.

### 1. Legal standard

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions

7

of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004) (because the opinion of a treating source is entitled to controlling weight under certain circumstances, the ALJ must articulate good reasons for not crediting the opinion of a treating source under 20 C.F.R. § 404.1527(d)(2)).

### 2. Opinions expressed by the VAMC staff

Plaintiff's claim that the ALJ failed to properly evaluate the opinions of "the staff at the VAMC" is without merit. The administrative transcript in this case, which plaintiff refers to as "extensive," contains over 100 pages of records from the VAMC (AR 105-70, 269-318). Plaintiff's Brief at p. 13. Despite this lengthy medical record, plaintiff does not identify the opinion if a particular treating physician or health care provider at the VAMC and nor does he explain how the ALJ failed to properly evaluate any opinion rendered by a treating physician at the VAMC. Rather, plaintiff simply claims, in conclusory fashion, that the ALJ failed to address medical opinions of the VAMC staff. Accordingly, plaintiff's claim that the ALJ improperly evaluated medical opinions by "the staff at the VAMC in Battle Creek," is deemed waived. *See* Plaintiff's Brief at p. 12. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

**2.     Opinions expressed by Dr. Tripi**

Dr. Tripi examined plaintiff on July 8, 2006 (AR 181-87).[2] The doctor found that plaintiff suffered from service connected "[p]ost traumatic stress disorder, chronic, delayed" arising from his service in the Air Force in Vietnam from 1970-71 (AR 182-83). Based on his symptoms, Dr. Tripi assigned plaintiff a Global Assessment of Functioning (GAF) score of 42.[3] This score lies within the 41 to 50 range of the GAF scale, which indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *DSM-IV-TR* at p. 34.

Dr. Tripi also prepared a medical source statement for plaintiff's ability to do work-related activities (mental) on July 8, 2006 (AR 185-86). In this statement, Dr. Tripi concluded that plaintiff's impairment affected his ability to understand, remember and carry out instructions (AR 185). Specifically, plaintiff had: an "extreme" restriction in his ability to carry out detailed instructions; a "marked" restriction in his ability to understand and remember detailed instructions; a "moderate" restriction in his ability to understand, remember and carry out short, simple instructions; and a "moderate" restriction in his ability to make judgments on simple work related

---

[2] Plaintiff's refers to an examination by Dr. Tripi on July 17, 2006. Plaintiff's Brief at p. 8. The court notes that the examination actually occurred on July 8, 2006, with Dr. Tripi's Report of the examination dated July 17, 2006 (AR 181).

[3] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation of death." *Id.*

9

decisions (AR 185). Dr. Tripi also concluded that plaintiff's impairment affected his ability to respond appropriately to supervisors, co-workers and work pressures in a work setting (AR 186). Specifically, plaintiff had: an "extreme" restriction in his ability to interact appropriately with supervisor(s) and to respond appropriately to work pressures in a usual work setting; a "marked" restriction in his ability to interact appropriately with the public and co-workers; and a "moderate" restriction in his ability to respond appropriately to changes in a routine work setting (AR 186).

In reviewing plaintiff's mental condition, the ALJ acknowledged that plaintiff was diagnosed with depression and anxiety/PTSD and that he has been prescribed appropriate medications (AR 23). The ALJ reviewed the various GAF scores assigned to plaintiff during the closed period (ranging from 42 to 60) (AR 23). The ALJ noted that "the proffered GAF score of 50 is a subjective clinical impression of the claimant's overall functioning with dubious applicability to the claimant's social and occupational functioning" (AR 23). In this regard, the the ALJ observed that the Commissioner does not endorse the GAF score for use in disability determinations and that the GAF scores have no direct correlation to the severity requirements of the listings of the mental disorders listings (AR 23).

The court finds no error in the ALJ's review of plaintiff's mental impairment. While the ALJ is required to provide good reasons for the weight assigned to the opinions of a treating physician, he is not required to provide good reasons for the weight assigned to the opinions of a non-treating, examining psychologist such as Dr. Tripi. *See Ealy v. Commissioner of Social Security*, 594 F.3d 504, 517 (6th Cir. 2010) (the "good reasons" articulation requirement 20 C.F.R. § 404.1527(d)(2) applies only to treating sources not examining sources); *Smith v Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007) (same). Even if Dr. Tripi was a treating source,

the ALJ did not err in giving little or no evidentiary value to the GAF scores assigned to plaintiff. The Sixth Circuit has rejected the proposition that a determination of disability can be based solely on the unsupported, subjective determination of a GAF score. *See Rutter v. Commissioner of Soc. Sec.*, No. 95-1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996). "[A]ccording to the DSM's explanation of the GAF scale, a score may have little or no bearing on the subject's social and occupational functioning. . . we are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 511 (6th Cir. 2006), citing *Howard v. Commissioner of Social Security*, 276 F.3d 235, 241 (6th Cir. 2002). As the ALJ observed, "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements in our mental disorders listings.'" *Wind v. Barnhart*, 133 Fed. Appx. 684, 692 fn. 5 (11th Cir. 2005), quoting Response to Comment, Final Rules on Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764-65 (Aug. 21, 2000).

Furthermore, the ALJ's evaluation of plaintiff's mental impairments is supported by substantial evidence. The ALJ noted that plaintiff has been prescribed appropriate medication for his depression and anxiety/PTSD, that he is getting counseling, that he reports the counseling is helping, and that medical records from the VA show that plaintiff was taking the prescribed medications and reporting no side effects (AR 23). Despite alleging a total inability to work, plaintiff reported that he is able to take care of all of his own personal needs and, when not working, he fixes his own meals, dusts, mops, vacuums, launders clothes, washes dishes, shops for food and eats out once or twice a week (AR 23). The ALJ found that these daily activities were not those of an

individual who was completely unable to engage in any substantial gainful activity and "clearly reflect the ability to perform work activity" (AR 24). *See generally, Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability).

Accordingly, plaintiff's claim that the ALJ failed to properly evaluate physicians' opinions and GAF scores should be denied.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be affirmed.


Dated: June 6, 2011              /s/ Hugh W. Brenneman, Jr.
                                 HUGH W. BRENNEMAN, JR.
                                 United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).